USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: NOV 09 2012

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
LANDESBANK BADEN-WURTTEMBERG, ET AL., :

                Plaintiffs, :

     -v- :

BEAR STEARNS & CO., INC., ET AL, :

                Defendants. :
----------------------------------------------------------------X

12 Civ. 1407 (AJN)

ORDER

ALISON J. NATHAN, District Judge:

    Plaintiffs are an international commercial bank, a Cayman trust, and two special purpose vehicles incorporated in Ireland. (Am. Cmplt. ¶¶ 13-16) Plaintiffs originally brought this suit in New York state court alleging common law fraud, fraudulent inducement, aiding and abetting fraudulent inducement, negligent misrepresentation and successor liability against Defendants in relation to the sale of residential mortgage-backed securities ("RMBS"). (Am. Cmplt. ¶¶ 243-331) Defendants are entities allegedly responsible for various aspects of the securitizations at issue here. (Am. Cmplt. ¶¶ 18-32) According to the Amended Complaint, Plaintiffs purchased over $450 million worth of RMBS from certain Defendants between 2005 and 2007. (Am. Cmplt. ¶ 2) Plaintiffs allege that Defendants made, or aided and abetted the making, of material misrepresentations regarding the quality of the mortgages underlying the RMBS and their compliance with loan origination and underwriting standards. (Am. Cmplt. ¶¶ 7-9)

    Defendants removed the instant action to this Court citing the Edge Act, 12 U.S.C. § 632, and "related to" bankruptcy jurisdiction, 28 U.S.C. § 1334(b), as the jurisdictional bases for removal. (Not. of Rem., Dkt. # 1) Before the Court is Plaintiffs' motion to remand this action to

1

the Supreme Court of the State of New York, County of New York. (Dkt. # 7) For the following reasons, Plaintiffs' motion is GRANTED.

## I. LEGAL STANDARD

"An action which was originally filed in state court may be removed by a defendant to federal court only if the case could have been originally filed in federal court." *Hernandez v. Conriv Realty Assocs.*, 116 F.3d 35, 38 (2d Cir. 1997). "When a party challenges the removal of an action from state court, the burden falls on the removing party 'to establish its right to a federal forum by competent proof.'" *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, No. 1:00–1898, 2006 WL 1004725, at *2 (S.D.N.Y. Apr. 17, 2006) (quoting *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir. 1970)). In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe removal statutes narrowly, resolving any doubts against removability. *Allstate Ins. Co. v. Citimortgage, Inc.*, 2012 WL 967582, at *2 (S.D.N.Y. Mar. 13, 2012). Accordingly, "the party seeking remand is presumed to be entitled to it unless the moving party can demonstrate otherwise." *Bellido-Sullivan v. Am. Int'l Grp., Inc.*, 123 F. Supp. 2d 161, 163 (S.D.N.Y. 2000).

## II. BACKGROUND

The following background is drawn from Plaintiffs' Amended Complaint, Defendants' Notice of Removal, Plaintiffs' Memorandum of Law in Support of Motion to Remand and exhibits thereto and Defendants' Memorandum of Law in Opposition and exhibits thereto.

From 2005 to 2007, Plaintiffs purchased over $450 million worth of RMBS in seventeen securitizations. (Am. Cmplt. ¶ 2) According to Plaintiffs, Defendant Bear Stearns & Co. was the underwriter for twelve of these securitizations, defendant WaMu Capital Corporation was the

underwriter for four, and JPMorgan Securities LLC was the underwriter for one. (Am. Cmplt. ¶¶ 18, 24, 29) Various other Bear Stearns defendants, Washington Mutual defendants, and JP Morgan defendants either originated the mortgages underlying these securitizations, created the attendant loan pools, or acted as "depositor" for the securitizations, segmenting the loan pools and transferring the RMBS to the underwriter for sale to investors. (Am. Cmplt. ¶¶ 18-32) Plaintiffs allege that they purchased the RMBS at issue here in reliance on offering materials containing materially false representations regarding the quality of the various loan pools and the riskiness of the RMBS. (Am. Cmplt. ¶¶ 156-57)

A number of the entities that originated the mortgages underlying the securitizations at issue here, or their parent corporations, have filed bankruptcy petitions. (Slifkin Decl. ¶¶ 2-3) Defendants contend that pursuant to agreements between certain defendants and the bankrupt originators, as well as statutory and common law, the bankrupt originators owe Defendants indemnification and/or contribution for claims arising out of misrepresentations regarding the underlying mortgages. (Not. of Rem. ¶ 19) The bankrupt originators against whom Defendants assert they have indemnification rights include: Aegis Mortgage Corporation ("Aegis"), American Home Mortgage Corporation ("AHM"), Bear Stearns Residential Mortgage Corporation, a subsidiary of Accredited Home Lenders ("Accredited"), and SouthStar Funding, LLC ("Southstar"). (Opp. 4)

Defendants, however, have not filed a timely proof of claim in any open bankruptcy proceeding involving a bankrupt originator. In the Aegis bankruptcy, Defendants Bear Stearns & Co. Inc. and EMC Mortgage Corporation filed and settled their proofs of claim. (Opp. 4) After court approval of the settlement, Defendants withdrew their proofs. (Opp. 4) Bear Stearns and EMC Mortgage Corp. expressly represented in their agreement with Aegis that they have

3

"no other claims against the Debtors except for those proofs of claim described in this Stipulation." (Johnson Decl. Ex. 3 at 8) In the AHM bankruptcy, Defendant J.P. Morgan Acceptance Corporation I filed a proof of claim after the bar date, although the claim has not been disallowed. (Opp. 5) The bankruptcy plan of liquidation has been confirmed. (Opp. 5) In the Accredited bankruptcy, the relevant Defendants have not filed proofs of claim, and the bankruptcy plan of liquidation has been confirmed. (Opp. 5) Finally, in the SouthStar bankruptcy, Washington Mutual Bank filed a timely proof of claim but the bankruptcy is closed and all assets have been liquidated. (Opp. 5)

Plaintiffs commenced this action in the Supreme Court of the State of New York, County of New York, on September 29, 2011. On January 27, 2012, Plaintiffs filed an amended complaint. On February 24, 2012, Defendants filed a notice of removal in this Court, and on March 26, 2012, Plaintiffs moved to remand this action to state court.

### III. DISCUSSION

Defendants removed this action from New York state court alleging that this Court has Edge Act jurisdiction, 12 U.S.C. § 632, and "related to" bankruptcy jurisdiction, 28 U.S.C. § 1334(b). (Not. of Rem. ¶¶ 15, 21) Plaintiffs move to remand, asserting that this Court does not have Edge Act jurisdiction, that it does not have "related to" bankruptcy jurisdiction, and that even if it did have "related to" bankruptcy jurisdiction, remand would be appropriate pursuant to either 28 U.S.C. § 1334(c)(2) (mandatory abstention) or 28 U.S.C. § 1334(c)(1) (permissive abstention). (Mot. 1) For the reasons that follow, the Court agrees that it does not have Edge Act jurisdiction, and it finds that even if it did have "related to" bankruptcy jurisdiction, it would abstain pursuant to § 1334(c)(1). Consequently, remand of this action is proper.

4

### A. Edge Act Jurisdiction

The Edge Act provides federal district courts with subject matter jurisdiction over certain state or common law actions involving international banking. The Act provides, in relevant part:

> [A]ll suits of a civil nature at common law or in equity to which any corporation organized under the laws of the United States shall be a party, arising out of transactions involving international or foreign banking, or banking in a dependency or insular possession of the United States, or out of other international or foreign financial operations, either directly or through the agency, ownership, or control of branches or local institutions in dependencies or insular possessions of the United States or in foreign countries, shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such suits; and any defendant in any such suit may, at any time before the trial thereof, remove such suits from a State court into the district court of the United States. . .

12 U.S.C. § 632.

The requirements for Edge Act jurisdiction therefore include (1) that one of the parties be a "corporation organized under the laws of the United States" (*i.e.*, a bank chartered under federal law) and (2) that the controversy arise out of either "transactions involving international or foreign banking" or "other international or foreign financial operations." There is no dispute that the first requirement is satisfied. Defendant JPMorgan Chase Bank, N.A. ("Chase Bank") is a national bank chartered under federal law.[1] (Am. Cmplt. ¶ 28; Not. of Rem. ¶ 22; Opp. 20) Instead, the instant dispute centers on whether the second requirement is satisfied by the sale of RMBS to Plaintiffs, which are foreign entities. (Mot. 17-19; Not. of Rem. ¶ 22; Opp. 20)

Plaintiffs make a number of arguments as to why the second requirement is not satisfied, including that "[t]he only 'foreign or international' component of this action is the presence of foreign plaintiffs, none of which engaged in any banking activity or financial operation with

---

[1] No other party is asserted to be a "corporation organized under the laws of the United States" within the meaning of the Edge Act.

5

Chase Bank in connection [with] the securitizations at issue." (Mot. 18) Defendants counter that Edge Act jurisdiction does not require Chase Bank to have been directly involved in any of the international transactions underlying Plaintiffs' claims. (Opp. 21-22) For the reasons that follow, the Court finds that the Edge Act does require a direct nexus between the federally chartered bank and the international banking or financial transaction that forms the basis of the jurisdictional claim. The Court further concludes that this requirement is not satisfied here.

### 1. The Edge Act Requires A Direct Nexus Between the Federally Chartered Bank and the Relevant Transaction

The Court joins other courts in this District in concluding that jurisdiction under the Edge Act requires a direct nexus between the federally chartered bank and the foreign or international transaction that forms the basis of the jurisdictional claim. *See, e.g.*, *Sealink Funding Ltd. v. Bear Stearns & Co. Inc.*, No. 12 Civ. 1397, 2012 WL 4794450, at *5 (S.D.N.Y. Oct. 9, 2012); *Lazard Freres & Co. v. First Nat'l Bank of Md.*, No. 91 Civ. 0628, 1991 WL 221087, at *2 (S.D.N.Y. Oct. 15, 1991).

This view is supported by the Second Circuit's decision in *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 791-92 (2d Cir. 1980), which in part addressed the scope of the "international or foreign banking" or "other international or foreign financial operations" requirement. In *Vintero*, the Second Circuit expressed skepticism that the sale, within the United States, of notes from a non-bank entity to a Canadian bank constituted "foreign banking" within the meaning of the Edge Act. *Id.* at 792. By contrast, it found this requirement satisfied by a transaction in which a federally chartered bank allowed an American company to draw on a letter of credit on the account of a Venezuelan corporation. *Id.* Thus, *Vintero* supports the conclusion that Edge Act jurisdiction requires the federally chartered bank to have participated directly in the relevant foreign or international transaction.

6

This conclusion is also supported by the language of the Edge Act, which provides for jurisdiction only if the claim "aris[es] out of . . . international or foreign banking . . . or out of other international or foreign financial operations, *either directly or through the agency, ownership, or control of branches or local institutions in dependencies or insular possessions of the United States or in foreign countries. . .*" 12 U.S.C. § 632 (emphasis added) As the court noted in *Sealink*, this language "suggests that the bank itself or its affiliate must be directly involved in the international or foreign aspect of the operation." 2012 WL 4794450, at *5.

Defendants nonetheless argue that no direct link need exist between the national bank and the foreign banking or financial transaction. Defendants cite two cases in support of this contention. (Opp. 21-22) In *American International Group, Inc. v. Bank of America Corp.*, 820 F. Supp. 2d 555 (S.D.N.Y. 2011), the plaintiffs brought suit in state court following their purchase of RMBS from certain of the defendants. 820 F. Supp. 2d at 555-56. The defendants removed the action to federal court, asserting that the district court had jurisdiction pursuant to the Edge Act. *Id.* But unlike the action now before this Court, the transactions that provided the basis for Edge Act jurisdiction in *A.I.G.* were mortgage transactions underlying the RMBS and not the sale of the RMBS to the plaintiffs. *Id.* at 557. The district court held that the mortgage transactions were sufficient to support Edge Act jurisdiction because they involved properties in United States territories and, therefore, they constituted banking in a dependency or insular possession of the United States. *Id.*

In support of their motion to remand, the *A.I.G.* plaintiffs argued, *inter alia*, that the only defendant who was a federally chartered bank for Edge Act purposes was not named in the complaint as a party to the claims involving territorial mortgages. *Id.* The district court expressed skepticism that the Edge Act requires "a perfect match between the particular entity

7

involved in the territorial transaction and the party against whom the claim is brought." *Id.* at 557-58. Defendants in the instant action assert that this expression of skepticism regarding the need for a perfect match undermines the conclusion that the federally chartered bank must have a direct connection to the transaction underlying the jurisdictional claim. (Opp. 21-22) The Court disagrees for two reasons.

First, it is not at all clear that the *A.I.G.* court was addressing the issue of what connection the federally chartered bank must have with the transaction underlying the jurisdictional claim. Rather, the district court appears to have been responding to the plaintiffs' argument that the nationally chartered bank must be named in the complaint as a defendant on the claims involving territorial mortgages. *Am. Int'l Grp.*, 820 F. Supp. 2d at 557. Indeed, the district court cited *Vintero*, noting that in that case, an international banking transaction engaged in by a federally chartered bank provided Edge Act jurisdiction despite the fact that the federally chartered bank was not a party to the original suit. *Id.* at 558. Thus, the perfect match skepticism to which Defendants point is not clearly skepticism regarding the necessary connection between the federally chartered bank and the transaction underlying the jurisdictional claim.

Second, even if the *A.I.G.* court did in fact intend to express skepticism on this point, it provided no reasoning for such a conclusion. It simply cited *Vintero*, which, as indicated *supra* p. 6, supports a direct connection requirement. For these reasons, the Court is not persuaded that *A.I.G.* undermines the Court's conclusion.

The Court also considers *Bank of America Corp. v. Lemgruber*, 385 F. Supp. 2d 200 (S.D.N.Y. 2005), cited by Defendants. (Opp. 21) In *Lemgruber*, the plaintiffs, three of which were federally chartered banks, brought suit in federal court asserting claims for fraudulent inducement, conversion, breach of fiduciary duty and breach of contract related to their purchase

of foreign bank stock from the defendants. 385 F. Supp. 2d at 206-7, 212, 213-14. Given this posture, there was no question that the federally chartered banks were directly involved in the transactions underlying the plaintiffs' claims. Rather, the issue addressed by the district court was whether the suit, which was primarily a breach of contract action, had a sufficient connection to banking. *Id.* at 215. Because *Lemgruber* did not address the requirement that there be a direct nexus between the federally chartered bank and the jurisdictional transaction, it does not alter the Court's conclusion here.

In sum, the Court joins the other courts in this District that have concluded that Edge Act jurisdiction requires the federally chartered bank to have a direct nexus with the international or foreign transaction underlying the jurisdictional claim.

## 2. The Direct Nexus Requirement Is Not Satisfied Here

Having determined that jurisdiction under the Edge Act requires the aforementioned direct nexus, the Court further concludes that this requirement is not satisfied here. The only transactions identified by Defendants as having any international dimension are the sales of the RMBS to Plaintiffs, none of whom are a federally chartered bank. (Not. of Rem. ¶ 22; Opp. 20) Defendant Chase Bank – the only party that is a federally chartered bank – is not alleged to have had direct involvement in these sales. (Mot 17-18) Rather, Chase Bank's alleged role in the securitizations is limited to originating some of the United States mortgages that its wholly-owned subsidiary used in creating the loan pool that ultimately served as the foundation for the JP Morgan securitization at issue here. (Am. Cmplt. ¶¶ 118, 254) A separate entity, JPMorgan Securities LLC, was allegedly the underwriter for this securitization. (Am. Cmplt. ¶¶ 29, 254) Because there is not a direct nexus between Chase Bank and the sale of the RMBS to Plaintiffs, the Court finds that it does not have Edge Act jurisdiction over this action.

### B. "Related To" Bankruptcy Jurisdiction

Defendants contend that even if this Court does not have jurisdiction over this action pursuant to the Edge Act, it has jurisdiction under 28 U.S.C. § 1334(b), which confers on district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." (Not. of Rem. ¶ 15; Opp. 6) More specifically, Defendants assert that that this action "relates to" the Aegis bankruptcy, the AHM bankruptcy, the Accredited bankruptcy, and the SouthStar bankruptcy because the bankrupt originators owe Defendants indemnification and/or contribution for claims arising out of misrepresentations regarding the underlying mortgages. (Not. of Rem. ¶ 19; Opp. 6)

Plaintiffs disagree. They assert that this action is not "related to" any of the aforementioned bankruptcies because Defendants have not filed a timely proof of claim in any open bankruptcy proceeding involving a bankrupt originator. (Mot. 9-11) Plaintiffs further contend that even if the Court concludes that it does have "related to" jurisdiction, remand is appropriate pursuant to either 28 U.S.C. § 1334(c)(2) (mandatory abstention) or 28 U.S.C. § 1334(c)(1) (permissive abstention).

The Court finds that remand of this action is warranted because any effect that it might have on the cited bankruptcies is at best speculative and because the requirements for permissive abstention are fully satisfied.

#### 1. Relatedness Of This Action To The Cited Bankruptcies Is Speculative

For purposes of § 1334(b), an action is "related to" a bankruptcy proceeding "if the action's outcome might have any conceivable effect on the bankrupt estate." *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011) (internal quotation marks omitted). "Conceivable effects typically manifest themselves by altering the amount of property

available for distribution to the creditors of a bankruptcy estate or the allocation of property among such creditors." *Allstate Ins. Co. v. Credit Suisse Sec. (USA) LLC*, No. 11 Civ. 2232, 2011 WL 4965150, at *3 (S.D.N.Y. Oct. 19, 2011); *see also Parmalat*, 639 F.3d at 579 (finding "related to" jurisdiction because the action had the potential to augment the bankruptcy estate). A contingent outcome may satisfy the "conceivable effects" test. *Id.* Ultimately, Defendants' anticipated indemnification claims "cannot affect the bankruptcy estate or the allocation of property to creditors unless Defendants are in a position to receive distributions on account of allowed indemnification claims." *Sealink Funding Ltd.*, 2012 WL 4794450, at *3.

Under this standard, the effect of the instant litigation on the cited bankruptcies is, at best, tenuous. In the Aegis bankruptcy, Defendants have already settled their proofs of claim and entered into a settlement agreement expressly stating that they have *no other claims* against those debtors. (Opp. 4; Johnson Decl. Ex. 3 at 8)

In both the AHM bankruptcy and the Accredited bankruptcy, Defendants failed to file a timely proof of claim, and the bankruptcies have been confirmed. (Opp. 5) Defendants contend that the bankruptcy court *might* still allow them to pursue late-filed claims pursuant to Fed.R.Bkptry.P. 9006(b)(1), which empowers a court to allow a time-barred proof of claim "where the failure to act was the result of excusable neglect," and that if such claims are filed and allowed, they could affect these bankruptcies. (Opp. 10-12) However, Defendants have not cited a single case in which a court found "related to" jurisdiction based on such a tentative impact.

Finally, Defendants acknowledge that the SouthStar estate has already been liquidated, (Opp. 5), and offer no explanation as to how, despite the liquidation, this litigation could nonetheless impact the bankruptcy.

In light of the foregoing, the Court finds that any effect that the instant litigation could have on the cited bankruptcies is highly speculative. In the end, however, the Court need not decide whether this forecloses "related to" jurisdiction because, even assuming that it does not, abstention is appropriate for the reasons discussed in the following section.

### 2. Permissive Abstention Is Appropriate

Pursuant to 28 U.S.C. § 1334(c)(1), a federal district court may abstain from hearing an action that is otherwise related to a case under title 11. Courts in this District consider the following factors when determining whether to exercise permissive abstention under § 1334(c):

> (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed defendants.

*Guccione v. Bell*, No. 06 Civ. 492, 2006 WL 2032641, at *5 (S.D.N.Y. July 20, 2006). Appling these factors to the instant action, the Court finds that abstention is warranted.

As to the first and fifth factors, the Court has already articulated why, in its view, the possibility of the instant litigation affecting the cited bankruptcies is remote. *See supra* §III.B.1. As to the second, third, and fourth factors, while this case does not appear to present questions of state law that are particularly unsettled, it cannot be denied that Plaintiffs' claims arise *entirely* out of state law and that "comity considerations dictate that federal courts should be hesitant to exercise jurisdiction when state issues substantially predominate." *Sealink Funding Ltd.*, 2012 WL 4794450, at *4 (quoting *In re 9281 Shore Road Owners Corp.*, 214 B.R. 676, 696 (E.D.N.Y.1997)). Finally, neither party has argued that remand will affect its access to a jury trial. For these reasons, the Court finds that abstention pursuant to § 1334(c)(1) is appropriate in the instant action.

IV.  **CONCLUSION**

For the foregoing reasons, Plaintiff's motion to remand is GRANTED. This action is REMANDED to the Supreme Court of the State of New York, County of New York, and the Clerk of the Court is instructed to close this case.

SO ORDERED.

Dated: November 9, 2012
       New York, New York

_____
ALISON J. NATHAN
United States District Judge

13